UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID H. BILLION, individually, OG ENERGY LLC, a South Dakota Limited Liability Company, and WATER SOLUTIONS INC., a South Dakota Corporation,<br><br>                Plaintiffs,<br><br>vs.<br><br>DEREK OXFORD, individually, and VERDE WATER SOLUTIONS LLC, a Texas Limited Liability Company,<br><br>                Defendants. | CIV. 15-4179-KES<br><br><br><br>ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS |

Defendants, Derek Oxford and Verde Water Solutions LLC, move the court for an order to dismiss Count II (Breach of Contract against defendants), Count III (Breach of Contract against Oxford), Count IV (Tortious Interference with Contract against Verde), Count V (Unjust Enrichment/Quantum Meruit against Verde), and Count VI (Unfair Competition against defendants). Plaintiffs, David H. Billion, OG Energy LLC, and Water Solutions Inc., resist the motion.

## FACTS

The facts as alleged by plaintiffs in their complaint are as follows:

OG Energy, LLC (OG Energy Georgia) is a dissolved Georgia Limited Liability Company that previously had its principle place of business in Douglasville, Georgia. OG Energy Georgia specialized in providing equipment,

1

machinery, and spare parts for oil, gas, mining, and construction businesses. OG Energy Georgia was owned by non-party Mike Locascio and Oxford. On February 16, 2010, OG Energy Georgia entered into a term loan agreement with Billion. Under the note on the loan, OG Energy Georgia agreed to pay Billion $720,000 plus interest. Locascio and Oxford also personally guaranteed the repayment obligations of OG Energy Georgia.

On December 1, 2010, Oxford, Locascio, and plaintiffs entered into a settlement agreement regarding the outstanding debt on the note. Under the settlement agreement, Oxford and Locascio agreed to transfer all of the assets of OG Energy Georgia to OG Energy South Dakota, which was a newly formed LLC organized under the laws of South Dakota. Additionally, OG Energy South Dakota assumed $360,000 of OG Energy Georgia's indebtedness, Locascio assumed $112,000, plus interest, of the indebtedness, and Oxford assumed $112,000, plus interest, of the indebtedness.

OG Energy South Dakota and Water Solutions[1] developed a waste water treatment system for the removal of animal processing contaminants. The System utilizes a specific formula of one or more chemical coagulants that pass through a microfiltration membrane. The System removes animal processing contaminants such as fats, oils, and greases from waste water. Plaintiffs state that the various parts and the specific formula that make up the System are

---

[1] Water Solutions is a South Dakota corporation that specializes in developing, selling, installing, and servicing water filtration systems to residential and commercial customers. Billion is the corporate president.

confidential and proprietary information that belong to OG Energy South Dakota and Water Solutions.

OG Energy South Dakota and Water Solutions had been in discussions with non-party Valley Proteins, Inc., regarding the construction of a System for one of Valley Proteins' facilities. Before entering into a contract with Valley Proteins, OG Energy South Dakota and Water Solutions performed laboratory tests and analyses to determine the unique chemical and mechanical processes needed to construct a System for Valley Proteins. Plaintiffs assert these preliminary designs were the confidential and proprietary information of OG Energy South Dakota and Water Solutions. The information was stored in a secured location and was not disclosed to the public.

On November 1, 2010, Oxford entered into an Independent Sales Representation Agreement with OG Energy South Dakota. Oxford agreed to sell products and technology owned by Water Solutions and OG Energy South Dakota in exchange for a commission. On February 15, 2012, Oxford was notified by letter that the Sales Agreement was terminated effective thirty days from the date of the letter. The letter also notified Oxford that he was still bound by the provisions of the Settlement Agreement, the Sales Agreement, and the note.

Section 4 of the Settlement Agreement contained a confidentiality clause that stated:

> any information obtained regarding the operation of OG South Dakota or Water Solutions, their products, services, policies, or any other aspect of their business is confidential, and shall not be revealed or disclosed to any person, company or other entity

> without the prior written consent of OG South Dakota and Water Solutions . . . . Upon termination of the relationship between Releasing Parties and the Released Parties, the Releasing Parties agree to return all proprietary and confidential information to OG and Water Solutions . . . and not make use of any proprietary or confidential information known by them. Releasing Parties are not authorized to use any of this information upon termination of the Agreement. Any technology, modifications, improvements or enhancements which . . . become known to Releasing Parties during the term of this Agreement shall be, in all respects the sole and exclusive property of OG South Dakota and Water Solutions.

Docket 12-1 at § 4 (Exhibit A: Settlement Agreement and Release).

Section 6 of the Sales Agreement contained a confidentiality clause that is nearly identical to that of the Settlement Agreement:

> any information obtained regarding the operation of OG or Water Solutions, their products, services, policies or any other aspect of their business is confidential, and shall not be revealed or disclosed to any person, company or other entity without the prior written consent of OG and Water Solutions . . . .

Docket 12-3 at § 6 (Exhibit C: Independent Sales Representation Agreement).

Section 10 of the Sales Agreement is a provision in which Oxford agreed that "he is personally guaranteeing the compliance with this Agreement both individually and on behalf of any entity formed by him." *Id.* at § 10.

While Oxford worked for OG Energy and Water Solutions, Oxford developed intimate knowledge of the System and the specific plans for Valley Proteins. After the Sales Agreement between Oxford and OG Energy South Dakota was terminated, plaintiffs allege Oxford formed Verde Water Solutions, LLC. In January 2015, after OG Energy South Dakota and Water Solutions had established a preliminary System for Valley Proteins, Verde sold a water filtration system to Valley Proteins. Plaintiffs assert that Oxford used its

4

confidential and propriety information about the System in general, and the specific design that was developed by plaintiffs for Valley Proteins, when Verde sold a water filtration to Valley Proteins.

Plaintiffs filed a complaint in state court. Defendants removed the action to federal court. Plaintiffs then filed an amended complaint to satisfy the federal pleading standard set by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Docket 12. Defendants now move to dismiss Counts II, III, IV, V, and VI of the amended complaint for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). Docket 13.

## Legal Standard

When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court determines plausibility by considering only the materials in the pleadings and exhibits attached to the complaint, drawing on experience and common sense,

and viewing the plaintiff's claim as a whole. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)).

## Discussion

I.   **Breach of Contract Count II (Sales Agreement) (Oxford and Verde) and Count III (Settlement Agreement) (Oxford)**

Plaintiffs brought Count II against Oxford and Verde for breach of contract in regard to § 6 of the Sales Agreement. They assert that Verde is an entity formed by Oxford and therefore a party to the Sales Agreement per § 10. Plaintiffs brought Count III against Oxford for breach of contract in regard to § 4 of the Settlement Agreement.

A non-disclosure clause is unenforceable if: "(1) a trade secret or confidential relationship does not exist, (2) the employer discloses the information to others not in a confidential relationship, or (3) it is legitimately discovered and openly used by others." *1st Am. Sys., Inc. v. Rezatto*, 311 N.W.2d 51, 57 (S.D. 1981) (citing *State Farm Mut. Ins. Co. v. Dempster,* 344 P.2d 821, 825-26 (Cal. Dist. Ct. App. 1959) (citations omitted)). Furthermore, such non-disclosure "covenants are strictly construed and enforced only to the extent reasonably necessary to protect the employer's interest in confidential information." *Hot Stuff Foods, LLC v. Mean Gene's Enters., Inc.*, 468 F. Supp. 2d 1078, 1101 (D.S.D. 2006) (citing *Rezatto*, 311 N.W.2d at 57). Plaintiffs claim that information about the System and the Valley Protein design was confidential and that OG Energy South Dakota and Water Solutions advised

their employees it was confidential. Plaintiffs also stored the information in a secure location and did not disclose the information to the public. Docket 12 at ¶ 43. Assuming the facts in the complaint are true, plaintiffs have stated a claim for breach of contract under Counts II and III unless the contracts are unenforceable due to broadness.

Defendants argue that the non-disclosure provisions in § 6 of the Sales Agreement and § 4 of the Settlement Agreement are unenforceable because they are too broad. Defendants cite to several cases from other districts where the courts refused to enforce overly broad non-compete provisions. *See Prometheus Grp. Enters., LLC v. Viziya Corp.*, No. 5:14-CV-32-BO, 2014 WL 3854812, at *5-7 (E.D.N.C. Aug. 5, 2014) (granting a defendant's 12(b)(6) motion to dismiss because "the non-compete provision at issue is overly broad" and "unreasonable and therefore unenforceable as a matter of law"); *see also Modus LLC v. Encore Legal Sols., Inc.*, No. CV-12-00699-PHX-JAT, 2013 WL 6628125, at *4 (D. Ariz. Dec. 17, 2013) (finding a non-compete agreement "unenforceable because its restrictions are not limited to protecting [plaintiff]'s confidential information or relationships"); *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 718 (N. D. Ill. 2014) (finding a non-compete clause was too broad and unenforceable and refusing to modify and narrow the clause). These cases are not binding in this court because they do not apply South Dakota law.

Defendants also argue the non-disclosure clauses in the Sales and Settlement Agreements are too broad because they state "**any information**

7

obtained . . . shall not be revealed or disclosed to any person." Docket 12-1 at § 4; Docket 12-3 at § 6 (emphasis added). Because the clauses do not specify non-public information in which plaintiffs have a legitimate interest, defendants argue the non-disclosure clauses should be excised from the contracts and deemed unenforceable. *See* Docket 14 (citing *Rezatto*, 311 N.W.2d at 60 (excising a broad non-compete clause from the contract)). In *Rezatto*, a broad non-compete clause was found to be unenforceable because it violated SDCL 53-9-8, South Dakota's restraint-on-trade statute. *Id.* Non-disclosure clauses, however, are not a general restraint on trade because "under SDCL 53-9-8, an agreement not to disclose information or solicit, unlike a covenant not to compete, is free from challenge as a general restraint on trade." *Id.* at 57. Because a non-disclosure clause, unlike a non-compete clause, is not a general restraint on trade in South Dakota, it is not held to the same strict standard as a non-compete clause if the language is too broad. Furthermore, even if a non-compete clause is too broad, South Dakota has allowed for partial enforcement in certain instances. *See Loescher v. Policky*, 173 N.W.2d 50, 485 (S.D. 1969) (modifying the geographical radius of a non-compete clause to make it enforceable); *see also Ward v. Midcom, Inc.*, 575 N.W.2d 233, 238 (S.D. 1998). Because defendants have failed to cite binding precedent establishing that broadness is a basis for rendering a non-disclosure agreement unenforceable, defendants' motion to dismiss Counts II and III is denied.

## II. Tortious Interference with Contract Count IV (Settlement Agreement) (Verde)

Because Verde was not a party to the Settlement Agreement, plaintiffs brought a tortious interference with contract claim, Count IV, against Verde for third-party interference with the Settlement Agreement. Under South Dakota law, to prove a tortious interference claim plaintiffs must show:

> (1) [T]he existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional and unjustified act of interference on the part of the interferer; (4) proof that the interference caused the harm sustained; and (5) damage to the party whose relationship or expectance was disrupted.

*Qwest Commc'ns Corp. v. Free Conferencing Corp.*, No. Civ. 07-4147-KES, 2014 WL 5782543, at *4 (D.S.D. Nov. 6, 2014) (quoting *Selle v. Tozser*, 786 N.W.2d 748, 753 (S.D. 2010) (citations omitted)). Plaintiffs attached the Settlement Agreement to their amended complaint, which shows the existence of a valid business relationship. If Verde is an entity formed by Oxford, then Verde would have knowledge of the relationship. There are sufficient facts in the claim that lead to the inference that Verde intentionally interfered with the Settlement Agreement by engaging in business with Valley Proteins, and that the interference caused plaintiffs harm. Thus, plaintiffs have pleaded a valid claim for tortious interference with contract if the non-disclosure clause is enforceable and Verde is a third party.

### a. Enforceability of Non-Disclosure Clause

Defendants based part of their motion to dismiss plaintiffs' tortious interference with contract claim, Count IV, on the premise that the non-

9

disclosure clauses were unenforceable. Because the court did not grant the motion to dismiss Counts II and III as unenforceable, defendants have not shown unenforceability with reference to Count IV.

### b. Whether Verde is a Third Party

Plaintiffs admit that Verde is a party to the Sales Agreement, per § 10, but assert that Verde is not a party to the Settlement Agreement. Defendants contend that if Verde is an entity formed by Oxford, as plaintiffs argue, then Verde is also a party to the Settlement Agreement. If Verde is not a third party, then there could be no tortious interference with the Settlement Agreement. *See Gruhlke v. Sioux Empire Fed. Credit Union, Inc.*, 756 N.W.2d 399, 406 (S.D. 2008) ("A third party is an indispensable element in the tort of intentional interference with contractual relations.") Because plaintiffs allege in their complaint that Verde is a third party to the Settlement Agreement, plaintiffs have pleaded a valid claim for tortious interference with a contract. *Freitas*, 703 F.3d at 438 (quoting *Richter*, 686 F.3d at 850).

### c. Preemption by SDCL § 37-29-7

Defendants also argue that plaintiffs' tortious interference with contract claim against Verde is based upon a misappropriation of trade secrets, which is preempted by the South Dakota Trade Secrets Act. SDCL 37-29-7 (stating this act "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.") But SDCL 37-29-7(1) states "[c]ontractual remedies, whether or not based upon misappropriation of a trade secret" are exempt from preemption. The South

10

Dakota Supreme Court has ruled that a tortious interference with contract claim based on a contractual non-disclosure clause, even when the third party is not a party to that contract, and is not preempted by SDCL 37-29-7. *Raven Indus., Inc. v. Lee*, 783 N.W.2d 844, 852 n.6 (S.D. 2010) (finding plaintiff's tortious interference of contract claim was "not based on the misappropriation of a trade secret, but rather the breach of the non-disclosure agreement" and "[a]s a result, [plaintiff's] tortious interference claim was not preempted by the UTSA"). Because plaintiffs' tortious interference with contract claim is based on the non-disclosure clause of the Settlement Agreement, it falls within the SDCL 37-29-7(1) contractual exemption and is not preempted by SDCL 37-29-7.

### III.  Unjust Enrichment/Quantum Meruit  Count V (Verde)

Plaintiffs also brought an unjust enrichment/quantum meruit claim, Count V, against Verde for knowingly and voluntarily receiving a benefit from its willful and malicious use of confidential and proprietary information that is protected under the Settlement Agreement. "Under South Dakota law, '[u]njust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.' " *Sancom, Inc. v. Qwest Commc'ns Corp.*, 643 F. Supp. 2d 1117, 1125 (D.S.D. 2009) (quoting *Hofeldt v. Mehling*, 658 N.W.2d 783, 788 (S.D. 2003) (citations omitted)). Plaintiff's complaint sufficiently alleges that Oxford received confidential information about the System and the Valley Proteins design, that Verde was formed by Oxford, and therefore, that Verde knew the confidential information. Ultimately, Verde sold a system to Valley Proteins based on the

11

confidential information and was possibly unjustly enriched. Thus, Count V is properly pleaded as long as it is not preempted by other law.

### a. Preemption by Breach of Contract Claim II

Defendants argue that if the claim is based strictly on a nondisclosure clause, then it is preempted by the breach of contract claim, Count II. *See Johnson v. Larson*, 779 N.W.2d 412, 416 (S.D. 2010) (holding "the equitable remedy of unjust enrichment is unwarranted when the rights of the parties are controlled by an express contract"); *see also Northern Valley Commc'ns, LLC v. Qwest Commc'ns Corp.*, 659 F. Supp. 2d. 1062, 1065-66 (D.S.D. 2009) (acknowledging that although "Fed. R. Civ. P. 8(d) allows parties to plead in the alternative . . . . [t]he South Dakota Supreme Court has held . . . . there is [a] procedural bar to plaintiff[s] alleging both contract and unjust enrichment claims.") Plaintiffs, however, contend that the claim is only against Verde, who is not a party to the Settlement Agreement. Because the claim is based on Verde's use of protected information under the Settlement Agreement, and Verde was not a party to the Settlement Agreement, the unjust enrichment/quantum meruit claim is not preempted by the breach of contract claim, Count II. *See Raven*, 783 N.W.2d at 847 (upholding an unfair competition tort claim against a third party for their use of information protected by a non-disclosure agreement, to which they were not a party).

### b. Preemption by SDCL § 37-29-7

Like the tortious interference with contract claim, plaintiffs' unjust enrichment/quantum meruit claim is not preempted by SDCL 37-29-7 because

12

it is based on the non-disclosure clause of the Settlement Agreement. Although Verde is not a part of the Settlement Agreement, the South Dakota Supreme Court has ruled that plaintiffs can exercise the contractual exemption of SDCL 37-29-7(1) against third parties when a claim is based on a non-disclosure clause. *See Raven*, 783 N.W.2d at 852 n.6.

### IV.   Unfair Competition Count V (Oxford and Verde)

Plaintiffs brought a common law unfair competition claim, Count VI, against both Oxford and Verde asserting unfair competition due to defendants' willful and malicious use of confidential and proprietary information that was protected under the Sales and Settlement Agreements. Under South Dakota law, "the tort of unfair competition does not have specific elements." *Setliff v. Akins*, 616 N.W.2d 878, 887 (S.D. 2000). "To succeed on an unfair competition claim, a plaintiff must establish the elements of an underlying tort." *Qwest Commc'ns Corp.*, 2014 WL 5782543, at *4. Because plaintiffs have pleaded a claim for tortious interference with contract, their unfair competition claim is valid against Verde unless it is preempted by other law. There is, however, no underlying tort claim against Oxford. Thus, the motion to dismiss the unfair competition claim against Oxford is granted.

Defendants also contend that the unfair competition claim against Verde is pre-empted by SDCL 37-29-7. Because plaintiffs allege that the unfair competition claim is based on the non-disclosure clauses, it falls within the contractual exemption of SDCL 37-29-7(1). *See Raven* 783 N.W.2d at 852 n.6.

Thus, the unfair competition claim against Verde is not preempted by SDCL 37-29-7.

## CONCLUSION

Plaintiffs have pleaded sufficient facts to support their claims in Counts II, III, IV, and V. Plaintiffs have properly pleaded Count IV against Verde but not Oxford. Thus, it is ORDERED that defendants' motion to dismiss the amended complaint (Docket 13) is denied in part and granted in part, consistent with this court's opinion.

Dated July 22, 2016.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE